## GILCHRIST CO. v. HAMILTON–BEACH MFG. CO.

District Court, E. D. Wisconsin. March 6, 1925.

Fred Gerlach and Charles H. Aldrich, both of Chicago, Ill., for plaintiff.

James Q. Rice and H. Monroe Humason, both of New York City, for defendant.

GEIGER, District Judge. Plaintiff is the owner of four patents: Gilchrist, No. 1,452,197, issued April 17, 1923, upon an application filed February 25, 1922; Gilchrist, No. 1,465,629, issued August 31, 1923, upon an application filed March 1, 1922; Gilchrist, No. 1,465,631, issued August 21, 1923, upon an application filed March 8, 1922; and Poplawski, No. 1,475,197, issued November 27, 1923, upon an application filed November 23, 1921.

These patents cover drink mixers; and the defendant is charged with infringement.

As the structures disclosed in the patents, as well as in the art, are quite readily understandable, the close compass within which the real issue between the parties is developed dispenses with the necessity at this point of setting forth detailed construction; certainly not that covered by what may be called subordinate claims of the patents in suit. The view that has been taken of the case does necessitate a consideration of the fundamental aspect of Gilchrist's claimed invention, to determine whether it is entitled to a place as a combination disclosure quite readily differentiated from any and all other structures in a somewhat crowded art. If this question can be answered in the affirmative, then, as the court intimated upon the hearing, many of the subordinate features would be accorded to the fundamental disclosure, regardless of recognition given them specifically in the patents.

In pursuing the course last noted, it will suffice to take patent No. 1,452,197—which is referred to as fundamental—to ascertain the patentee's objective. After noting the routine commonly found in and in connection with, the mixing of drinks and in the operation of mechanical contrivances, the patentee observes:

"A desideratum in this art is to expedite and simplify the operations necessary to bring the receptacle and agitator into co-operative relation, to maintain them in such relation, in starting and stopping of the motor and the removal of the receptacle."

This broad statement, probably not open to serious controversy, shows that the patentee intended to address himself to expedition and simplification of operations—whose problems, as an examination of the many patents in the art indicates, are present.

The patentee proceeds:

"Heretofore, in machines whereof I am aware, which were provided with means to retain the receptacle in co-operative relation to the agitator, it has been necessary in their use to manually manipulate the receptacle into operative position and withdraw it therefrom and to additionally perform some separate step or operation such as lowering the

motor and agitator together, or shifting the agitator and its shaft into the receptacle and relatively to the motor, or raising and locking a receptacle support to establish and maintain co-operative relation of the receptacle or agitator or to control the operation of the machine. Another desideratum in this art is to simplify the machine by dispensing with movable connections in and for the driving mechanism for the agitator."

Having thus broadly stated desired objects as well as a characterization of the prior art, he specifies more particularly these objects of his invention:

"1. * * * To provide an improved motor-driven mixer having an agitator which is mounted to work or rotate at a substantially fixed point with respect to the motor, with means adapted to receive the receptacle and automatically retain the agitator and receptacle in the co-operative relation as a result of the manual manipulation or placement of the receptacle itself."

"2. * * * To provide a mixer of this character with automatic means for controlling the motor responsively to placement and removal of the receptacle."

"3. * * * To provide improved means for removably holding a receptacle in co-operative relation with the agitator on a shaft depending from a stationarilly supported electric motor."

"4. * * * To provide improved means for controlling the operation of the motor which drives the agitator."

"5. * * * To provide a machine which is simple in construction which may be easily and readily operated and which is efficient in operation."

As indicated by the foregoing, Gilchrist clearly recognized that the field of endeavor was not broadly new—in fact, was quite crowded with structures of one sort or another. And without critical analysis of the art, it must be conceded that he did not invent automatic mixers wherein a receptacle with its contents is placed in operative position with a motor-driven agitator to the end that hand stirring or agitating be dispensed with; or one wherein the switch or contact mechanism is substantially like that of his patent, or like that found in structures in this or in other arts; or a shelf or holding mechanism which performs a dual function of holding the receptacle and upon operation is the means, as a lever, of turning a switch to start or stop the motor; or that he invented a pivoted hook (like that on a telephone receiver) which opens or closes the current for power; or whether he in-

vented any element; or whether his claimed combined elements may not be found in whole or in part in other larger or different combinations in this, in analogous, or in other arts. The case as I conceive, may be stated thus:

(1) Whether Gilchrist's estimate of the state of the art, supra, is correct.

(2) If so, whether he disclosed a combination structure which is differentiated from the art in that—upon comparison with other structures—he eliminates (by his combination of elements) additional or separate steps on operations such as lowering the motor and agitator together, or shifting the agitator and its shaft into a receptacle relatively to the motor, or raising and locking the receptacle support to establish and maintain co-operative relation of the receptacle and agitator, or to control the operation of the machine.

(3) If so, whether such combination is original, novel, and useful, in the sense of the patent law.

If these three questions are answered affirmatively, then upon elementary principles, the subject-matter was and is susceptible of recognition in valid patent claims. Plainly, the test of a valid combination of elements is not found in the insistence of the defendant here, viz., that the elements of some of these claims may all be found in other structures; that some of them co-operate in the same way; that because the general result —drink mixing—is accomplished, therefore there is identity of subject-matter and no patentability. The very essence of invention may reside, not in mere presence of equivalent elements, but in relationship or association effectuating simplicity, and improved operating results. Broadly speaking, there is and probably can be no claim that Gilchrist's machine in its fundamental disclosures makes a better mixture than other automatic mixers in the art. He makes no such claim, but does declare upon a combination asserted to be novel and distinctive in simplicity, in organization, and in operative possibilities.

So upon proceeding to answer the questions (the first and second) above propounded, it is not essential to consider structures in this or any other art, which deal with original discovery or application of any single element found in Gilchrist's claimed combination. But, as indicated, it is necessary, or at least proper, to accept to the full all concessions made by Gilchrist respecting the development, up to his time, of recognized types of "automatic" mixers, having a

motor upon a support, driving an agitator usually depending downwardly into a receptacle containing the substances to be mixed; also that in such types are found varieties of means for placing and holding the receptacle; for starting, maintaining and stopping the operation; and for enabling withdrawal of the receptacle. And consideration of these questions will proceed upon the fact—clearly established by the proofs—that Gilchrist, if he invented anything, did so in October, 1920.

Coming now to structures exemplified in patents to Jackson, No. 941,075, Osius, 1,005,653, Wood, 1,057,024, Han, 1,090,148, Portman, 1,141,358, Petitfils, 1,199,920, Schlicker, 1,344,565, it may be said that without exception each falls within the characterization given by Gilchrist to the prior art. A singularly good illustration is found in Petitfils, whose structure, as shown by the drawings and specifications, appears to be simple in its organization, but, because of its limited elements and their association, carries this routine of operation:

"When it is desired to mix a drink (1) the receptacle support 20 (shelf) is swung on its pivot (2) to permit a receptacle or glass to be raised so that the stirrer element with mixing element will enter the receptacle from above. (3) The support (shelf) is then swung into its closed position and (4) the receptacle is lowered to fit into the retaining flange 23, as shown in figure 1 (the glass fits into this flange or ring). (5) The electric switch is now closed to operate the stirring mechanism. After the contents of the receptacle have been sufficiently mixed (6) the receptacle is slightly raised to disengage it from the retaining flange 23 (7) the support 20 is swung out of the way and (8) the receptacle is vertically lowered to clear the stirring mechanism." (To the various "separate" steps noted should be added a ninth, viz., the turning or opening of the switch after using.)

This patent, granted in 1916, affords interesting comparison with those granted to Osius in 1911, to Wood in 1913, to Smith in 1919, supra.

Osius developed a type which I believe is presently manufactured by the defendant, and is exemplified in Exhibit No. 11 in evidence. On comparison with Petitfils, which has just been referred to, its complexity of organization is manifest. It is a true automatic mixer, and, although antedating Petitfils by nearly five years, the telescopic support for the motor enabling the depending agitator thereby to be pushed down into the receptacle, coupled with "an automatic electric circuit make and break mechanism for the motor incidental to the movement of its supporting standard," is put forth as the salient feature of his conception. It is obvious that, although more complex in organization he has eliminated some of the steps necessary to be taken in the operation of Petitfils.

In contrast with the latter, both Wood, in 1913, and Smith, in 1919, present what might be called a reverse idea, in that in each of them, instead of pressing the motor with a telescopic standard down into the receptacle, the latter is placed upon a pivoted shelf or bracket which, in its operation upward with the receptacle, operates the switch mechanism, and thus starts the mixing. So that, referring again to this matter of steps necessarily to be taken from and including the commencement of the mixing operation by placing the receptacle on or into the machine, to and including its termination by removing it therefrom, I believe that an examination of every other structure called to the attention of the court will bring this same result of demonstrating the correctness of Gilchrist's estimate of the state of the art as it disclosed these mixers having an upright or support for a motor with a depending automatic agitator. This comparison also illustrates the extent to which identical functions of elements in these different structures have been performed through widely different mechanisms. For example: Broadly speaking, the operation of the push buttons in Petitfils brings about the same result as does the pushing down of the upright in Osius—that is, the switch is opened or closed by the use of the buttons in one or the depression or release of the telescoping support in the other. The result, however, is that in each case, in order to accomplish the ultimate result of mixing, the steps necessary to be taken are dictated directly by the complexity of the machine and the mechanical relation of its various elements. And, as will be noted, this necessitates, upon comparison of some of these structures with Gilchrist, the conclusion that this relationship and method of associating the elements brings about greater or less complexity, but always a greater number of steps, as operating limitations.

If upon these considerations we can give an affirmative answer to the question first above propounded, it may confidently be said that a like answer may be made to the second. Granting that the make and break circuit mechanisms, supporting stand-

ards, motors, and other means for bringing about automatic action, in all of these structures, may be respectively the equivalents, each of the other, as elements, the query is, Has there been a mechanical association brought about by Gilchrist which differentiates his structure in its capabilities of operation from all others in the art? In my judgment, this question is easily answered by considering the possibility of operating any structure in the art in substantially the same manner, i. e., by taking substantially the same successive steps—no more and no less. Very clearly the fundamental patent in suit has provided a structure whose operation involves two, and only two, steps—(1) placing the receptacle on or into the mixer; (2) withdrawing it.

The organization is such that the receptacle itself becomes the mechanical means for effectuating the new association of elements. It becomes the means for getting rid of structural limitations—in their effect upon operation—found in every other mixer. And it makes no difference how conclusively it may be demonstrated that the switch mechanism, as such, in Gilchrist, is the broad equivalent of the same mechanism, as such, found in Petitfils, Wood, and Smith. His structure, in the fundamental respect of number of elements and their structural association, is entirely distinctive; and no better proof can be found than its comparison with Osius, or either of the others just cited. These brief considerations alone impel an affirmative answer to the second question, and advances the case to a consideration of the third; i. e., the results flowing from affirmative answers to these two questions.

Is there novelty in the act of taking all the elements of the art and picking out four to associate them in such a manner that greatly improved operating results may be achieved? I presume all would agree upon an affirmative answer to a question thus broadly stated. It probably makes little difference whether Gilchrist's structure may accurately be characterized as a "one-hand mixer"; that would probably depend upon first agreeing to a definition and its included and excluded elements. It may be urged that prior art structures necessitating a great number of steps are properly called "one-hand" because the successive steps do not necessitate the use of two hands. Very likely that is true. In viewing Petitfils as shown by his drawings, it may be conceded that the successive steps—eight or nine in number—may be taken by the use of one hand. The same thing may be said of Osius, Wood, and

Smith, though in practical operation it is not nearly so likely to be true. But this is true: That in the somewhat crowded art, nowhere does there appear—even by suggestion—this distinctive simplicity of Gilchrist. That limited comparison alone gives it novelty; and it would seem that, in its effect operatively to eliminate a succession of steps required in all the other's mixers, it is of undoubted utility; and, of course, unless something clearly countervails, the broad claim of invention is thus persuasively supported. Again, it is a circumstance of no mean significance that the defendant in this case, in putting out one of the two structures here complained of (it matters not which one it was; because upon this fundamental question they are alike), announced it as an "astounding invention." I am assuming that this characterization was not based upon the mere structural differences (to be referred to) now put forward to avoid infringement. If the defendant's present claim is at all tenable, there could be no such thing as an "astounding invention" in this art at any time, since the apparently distinctive Osius structure was brought out in 1911. Plainly, the defendant in so announcing could not have intended, at one and the same time, that either its No. 3 or "White Flash" structure was an "astounding invention upon comparison alike with Osius—a structure clearly distinctive—or with Gilchrist's, now claimed not to be an invention at all. I am prompted to say this because, on inspection, the defendant's alleged infringing mixers and Gilchrist's are fundamentally alike in their structure and operation, while, when compared with Osius, Wood, Smith, or Petitfils, they all are fundamentally distinctive in just the particulars noted by Gilchrist in his observations upon the state of the art.

This consideration, founded as it is upon answers to questions dealing with the character of the combinations of the patents in suit upon their comparison with the art, must result in affirming the validity of each of the claims of the so-called fundamental patent, and such of the claims of the other patents as embody the distinctive combinations thus far discussed. The conclusion comprehends such as claim No. 40 of patent 1,452,197, comprising as elements (1) a support; (2) an electric motor mounted thereon; (3) an agitator mounted as indicated; and (4) means to automatically retain the receptacle in its co-operative relation with the agitator upon manual manipulation of the receptacle itself into such relation; and, as further stated in claim 41, (5) means to

automatically control the operation of the motor so it will run while the receptacle is held by the retaining means.

Manifestly, when validity is accorded to claims such as these, strong reasons must be forthcoming to deny it to other claims embodying features which of themselves may be of little consequence, but effective as valuable adjuncts to or in the main combinations. Such, for example, is the slideway or guide for the receptacle as it is placed and held in operating relation. So, also, it is difficult to perceive why validity should be denied such claims of any of the patents as deal with a combination in which the elements may be structurally different, but yet exhibit plainly a combination capable of carrying out the distinctive idea of automatic mixing accomplished through the two steps of placing the receptacle into and withdrawing it from the mixer. Such are the claims eliminating the shelf-like projection upon the guide of the fundamental patent, and substituting therefor the annular hook at the top of the receptacle; also claims which utilize the weight of the container to move the container support and hold it in position to start the motor. Whatever may be said by way of criticism of the number of claims contained in the four patents in suit, the fact is that there were copending patents, interferences declared, and doubtless some claims received recognition largely because of their copendency with other claims in other patents whose more fundamental character was recognized. But many of these claims cover features of consequence in connection with the distinctive combinations; and this is made to appear most clearly upon an examination of the structures in evidence, as both plaintiff and defendant have developed them since the date of Gilchrist's invention. It is impossible, upon this view of the case, which, of course, proceeds upon the assumption that Gilchrist's endeavors were distinctive, to deny them a substantial place in the practical development of the art. What is hereinafter said upon the issue of infringement will, it is believed, elaborate this thought.

If this estimate of the four patents in suit is correct, the defendant unquestionably infringes. The fundamental features projected by Gilchrist, viz., the combinations referred to, for example, in claims 40 and 41, also the use of his retaining and supporting means which in turn start and maintain the operation, are adopted. It may be, as we have observed, that a hook serving in a combination mechanism to make or break a circuit was not and is not as such the invention of Gilchrist. It may be, as suggested upon oral argument, that in the electric art Gilchrist's mechanism may be viewed as the equivalent of the telephone receiver hook. But no one would deny that the introduction of the telephone hook upon present day telephone standards was accepted as a novel advance over the old mechanism requiring the ringing of a bell; and, when Gilchrist found it—assuming that he did—as an available element in his combination drink mixer, his combination was none the less novel.

No one would deny that an electric light produced by mere insertion of a bulb into the socket is an entirely novel advance over a structure requiring insertion of the bulb into the socket and a separate manual operation for turning on the current. Upon this limited view alone, Gilchrist accomplished much when he organized that element into association with others enabling the result through mere insertion of the receptacle. So, too, as indicated, the guide for the receptacle as it is being moved into operative relation should not be, and is not, considered as of the very essence of Gilchrist's invention, but it is a valuable adjunct. Of the defendant's two structures in suit, this may be said: Structure "No. 3" could not more clearly disclose an attempt both to adopt and to reject this feature. So far as the initial disclosure of Gilchrist is concerned, it rejects the form, but adopts wholly the mechanical substance and purpose. With respect to the "White Flash," this may be said by way of repeating what was observed on oral argument: A layman, not acquainted with the art nor with the practical operations attending a mixer, might not discover this guide. He might, as suggested, overlook the construction entirely, or, if he observed the concavity of the inner side of the standard, he might conclude that it was responsive to esthetic considerations. But when Gilchrist's patent, also the practical workings of the structure, are in mind—and this does not lose sight of the apparently studied carving out of that portion of the base in the defendant's new "White Flash" machine directly below the agitator—the almost indispensable utility of the concave surface is appreciated. Its presence is explained, and should not be dealt with upon the suggestion that it is a mere "fortuity"—it is none the less infringing.

It is believed that, upon the foregoing considerations, the defendant's contentions upon the issues of validity and infringement fail; and it is not necessary to consider the

many patents cited to establish that particular elements introduced by Gilchrist into his combination are old. The plaintiff's claims for the purposes of this case are conceived to treat (1) with a fundamentally distinctive combination; (2) with mechanical variants thereof; (3) with subordinate features or additional elements valuable in either of the other two.

The conclusion reached upholds the plaintiff's contention upon the claims specifically noted in this case as typical, viz., claims 4, 10, 11, 40, 41, 44, 49, and 52 of patent 1,452,197; claim 30, of patent 1,-465,629; claims 5, 6, 7, and 8 of patent 1,-465,631; claims 1, 2, 4, 5, and 6 of patent 1,475,197.

The plaintiff may take a decree finding the patents valid and infringed.